Kenneth C. ELMORE,
Plaintiff-Appellant,

v.

CHICAGO & ILLINOIS MIDLAND
RAILWAY COMPANY,
Defendant-Appellee.

No. 85–1501.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 17, 1985.

Decided Jan. 17, 1986.

Grady E. Holley, Holley, Keith & Mehlick, Springfield, Ill., for plaintiff-appellant.

Charles E. Holt, Graham & Graham, Springfield, Ill., for defendant-appellee.

Before BAUER, WOOD and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Kenneth Elmore, who was fired by the Chicago & Illinois Midland Railway for unauthorized moonlighting, asks us to reverse the judgment of the district court dismissing for lack of jurisdiction his petition to review a decision of the National

Railroad Adjustment Board upholding his firing.

The facts, somewhat simplified, are as follows. Elmore requested and was granted permission to take a personal day of leave on May 31, 1979. During that day he was seen doing roofing work on someone's house (not his own). On June 1 the railroad sent Elmore a letter notifying him, pursuant to Rule 32 of the collective bargaining contract, which requires notice and an opportunity for a hearing before a dismissal, that there would be a hearing to decide whether he had violated Rules P and W of the agreement. These rules provide that "Employees must not absent themselves from their duties ... without proper authority" and that "Employees will not be permitted to engage in other employment without permission of their employing officer."

The hearing was held on June 19 before an employee of the railroad. Elmore was represented by a union griever. The railroad's chief of police testified that he had seen Elmore repairing the roof. Elmore admitted that he had done some roofing work on the afternoon of his day off, May 31.

On June 29 the railroad fired Elmore for having violated Rule 15(c) of the collective bargaining agreement, which provides that "An employee absent on leave, who engages in other employment will forfeit all seniority rights, unless special arrangements shall have been made in writing...." On July 3 the hearing officer rendered her decision, finding that Elmore had indeed violated Rules P and W but imposing no sanction, since Elmore had been fired.

Elmore complained to the National Railroad Adjustment Board (see 45 U.S.C. § 153 First (i)) that the railroad had denied him due process of law by failing to give him notice of and a hearing on the charge of violating Rule 15(c). The Board disagreed, finding that Rule 15(c) "is self-executing and an investigation under Rule 32 is not required where Rule 15(c) is applicable."

Elmore petitioned the district court under 45 U.S.C. § 153 First (q) to set aside the Board's decision because he had been denied due process of law in the hearing conducted by the railroad. The district court dismissed the petition for lack of jurisdiction, because the petition did not advance one of the three grounds that the statute specifies for judicial review of a decision by the Board—failure of the Board to comply with the requirements of the Railway Labor Act; failure of the Board to confine itself to matters within its jurisdiction; fraud or corruption in the Board's decision. Elmore argues, however, with some basis in case law (see, e.g., *O'Neill v. Public Law Board No. 550*, 581 F.2d 692, 694 (7th Cir.1978); *Brotherhood of Maintenance of Way Employees v. St. Johnsbury & Lamoille County R.R.*, 512 F.Supp. 1079, 1084 (D.Vt.1981); cf. *Anderson v. National Railroad Passenger Corp.*, 754 F.2d 202, 203 (7th Cir.1984) (per curiam)), that a fourth ground should be read into the statute: violation of a constitutional right.

The Railway Labor Act establishes a scheme of compulsory arbitration for so-called minor disputes, which include disputes over an individual's job rights, as in this case. Although the Act itself uses the word "arbitration" to refer to an alternative mode of dispute settlement that the parties may elect under 45 U.S.C. § 157, see 10 Kheel, Labor Law § 50.06[1], at pp. 50–37 to 50–38 (1985), the procedure that the Act creates for parties who (as in this case) do not make that election is, in fact though not in name, arbitration, too. See 45 U.S.C. § 153 First. The tribunal, although grandly styled the National Railroad Adjustment Board, in fact consists of private individuals chosen by the railroad industry and the railroad unions. See 45 U.S.C. § 153 First (a), (h), (k), (*l*). The standard of judicial review of these arbitrators' decision is similar—perhaps, as we recently suggested in *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry.*, 768 F.2d 914, 921 (7th Cir.1985), identical—to the standard for ju-

dicial review of commercial and labor arbitration in general. Errors, even clear ones, are not grounds for setting aside the decision. If the decision is a bona fide effort to interpret and apply the parties' contract (the collective bargaining agreement), it is conclusive.

■ Private arbitration, however, really is private; and since constitutional rights are in general rights against government officials and agencies rather than against private individuals and organizations, the fact that a private arbitrator denies the procedural safeguards that are encompassed by the term "due process of law" cannot give rise to a constitutional complaint. The National Railroad Adjustment Board, however, while private in fact, is public in name and function; it is the tribunal that Congress has established to resolve certain disputes in the railroad industry. Its decisions therefore are acts of government, and must not deprive anyone of life, liberty, or property without due process of law. Since the kind of tenured employment that a railroad worker whose seniority rights have vested as Elmore's had is considered property within the meaning of the due process clause of the Fifth and Fourteenth Amendments, the deprivation of that employment by the National Railroad Adjustment Board would be a deprivation by the federal government of property without due process of law and would therefore be subject to the Fifth Amendment.

What follows from all this is a bundle of delicious uncertainties unnecessary to resolve here. If the Board, in reviewing a railroad's decision to fire someone, denies the worker due process, does this make the Board the depriver of the worker's property right? If so, is the deprivation actionable by a petition under the Railway Labor Act (45 U.S.C. § 153 First (q)) or must the worker bring a separate suit under 28 U.S.C. §§ 1331 or 1337? Is this perhaps a case where Congress has decided, by the limited scope specified for judicial review of decisions by the Board, to withhold a remedy for a constitutional violation?

None of these questions need be decided. We merely note that none of the cases that hold that section 153 First (q) provides an available and appropriate remedy for complaints of procedural unfairness *by the Board* extends the principle to procedural unfairness in the anterior grievance proceeding that takes place "on the [railroad] property," as it is said; and that is the only procedural unfairness charged here.

■ No doubt it was irregular for the railroad to notify Elmore that it was charging him with violations of Rules P and W, and not notify him with respect to Rule 15(c), which requires termination. Elmore may have gone to the hearing thinking he was facing at worst some much lesser sanction, only to find after the hearing that his admission of violating P and W had levered him right out of his job. But, at worst, the *railroad* deprived him of the procedural protections summarized in the term "due process"; and the railroad is not an arm of the federal or any other government. This conclusion follows a *fortiori* from our recent decision in the *Anderson* case, *supra*, that Amtrak is not a federal agency for these purposes, though for other purposes it may be. The Chicago & Illinois Midland Railway is incontestably private.

It is true that the Railway Labor Act forces railroads and workers to arbitrate their disputes and to establish as part of the arbitration process an initial grievance procedure on the property. See 45 U.S.C. § 153 First (i). But we do not think that this turns the railroad's grievance procedure into a governmental procedure required to conform to the requirements of due process. It is not as if the Act required or even encouraged the railroad to act irregularly in processing grievances; on the contrary, the Act creates an arbitral remedy against such behavior.

We think the line should be drawn between the informal grievance procedures that precede arbitration before the National Railroad Adjustment Board and the procedure before that Board; that is the line that distinguishes private from public in

this area. Obviously in drawing the line there we have regard for the practical consequences of our decision. To rule otherwise would be to constitutionalize grievance procedures in the railroad industry in the face of a long-standing and widely approved federal policy of minimizing judicial intervention in the settlement of labor disputes in that industry.

Since there was no constitutional violation in this case, we need not consider whether, if there had been, it would be actionable, and if so by what route. The judgment of the district court dismissing Elmore's petition to review the decision of the National Railroad Adjustment Board is

AFFIRMED.