Robert W. **STEFFENS** and Gerardo Garcia, Plaintiffs-Appellants,

v.

**BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, et al.,** Defendants-Appellees.

No. 85–3083.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1986.

Decided July 28, 1986.

As Amended on Denial of Rehearing Sept. 26, 1986.

Brenda A. Szeja, Chicago, Ill., for plaintiffs-appellants.

Paul V. Esposito, Lewis, Overbeck & Furman, Dale D. Pierson, Soloman & Hirsh, Chicago, Ill. for defendants-appellees.

Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Robert Steffens and Gerardo Garcia appeal from the district court's order dismissing this suit pursuant to Federal Rule of Civil Procedure 12(b)(6). We affirm.

## I

Like the district court, we accept as true those facts alleged in the complaint. In September 1981 a worker with more seniority displaced Steffens from a clerical position with the Grand Trunk Western Railroad Company (the "Grand Trunk"); Steffens therefore sought to displace from another clerical position a worker with less seniority than himself. Paul Rasmason, the terminal manager, informed him that he would have to take a typing test to obtain the new position. Steffens refused, believing that the Grand Trunk and Rasmason were requiring typing tests arbitrarily, in violation of the collective bargaining agreement. In October 1981 Steffens filed a grievance with his union, the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees ("BRAC"), requesting an investigation and demanding damages for this interference with his contractual seniority rights.

Grand Trunk held a hearing on November 18, 1981. The hearing, which was procedurally unfair to Steffens, resulted in a finding that his allegations were unfounded. Between January and October 1983 Steffens corresponded with BRAC and his local union, Success Lodge No. 468 (the "Lodge"), about the management practices of the Grand Trunk and the biased hearing to which he had been subjected. On October 28, 1983 BRAC informed Steffens that it was in "agreement with defendant Grand Trunk that plaintiff Steffens' case was weak...." Complaint, Count II, ¶ 6. Steffens continued to press his grievance, however, and on March 6, 1984 BRAC brought the case before a Public Law Board (the "Board"). On May 30, 1984 the Board awarded Steffens the opportunity to take the typing test for the position he had sought some two-and-a-half years earlier.

Gerardo Garcia was charged on August 16, 1982 with a "slow-down," attempting to

induce another employee to join the slow-down and causing a train to be thirty-five minutes late. He filed a grievance and requested a hearing. At the hearing, held on August 24, 1982, the Grand Trunk contravened the collective bargaining agreement by not allowing Garcia to call the witnesses he wished. It also conducted the hearing in a biased and unfair manner. Garcia was represented at the hearing by officers of both BRAC and the Lodge, who failed to conduct themselves either competently or in Garcia's interest. The charges against Garcia were found to be substantially true and Garcia was discharged on October 8, 1982. From that point, BRAC engaged in informal discussions with the Grand Trunk about Garcia's case, which culminated in the proposal that Garcia be censured and reinstated without backpay.

On May 11, 1983 Garcia wrote to BRAC, protesting the amount of time the union was taking in appealing the adverse decision to a Public Law Board. This hearing was finally scheduled for March 6, 1984, before the same Board that heard Steffens' grievance. On May 30, 1984, the Board awarded Garcia reinstatement without backpay.

On May 24, 1985, Steffens and Garcia filed a four-count complaint[1] in the district court, naming as defendants the Grand Trunk, Rasmason, BRAC, the Lodge and Michael Fauss, chairman of the Lodge. Jurisdiction was based on 28 U.S.C. §§ 1331 (federal question); 1337 (actions arising under a statute affecting commerce); 2201 and 2202 (declaratory judgments); and 45 U.S.C. § 153 first (q) (jurisdiction to review an order of a railway labor arbitral board). In Counts I and III they alleged that the Grand Trunk had breached its collective bargaining agreement, unjustly interfered with Steffens' exercise of his seniority rights, unjustly discharged Garcia and afforded both Steffens and Garcia hearings that were unfair and

violated their rights to due process of law. In Counts II and IV they alleged that BRAC and the Lodge condoned the unfair hearings, conspired with Grand Trunk to circumvent the provisions of the collective bargaining agreement and failed to competently represent them at the various proceedings, all in violation of their statutory duty of fair representation. Finally, scattered throughout the complaint are assertions that the Public Law Board "refused to decide the merits of the dispute, and ignored the facts of unjust treatment and discrimination," Complaint, Count II, ¶ 14; Count IV, ¶ 14, and that the Board's awards were "wholly void in that the Board exceeded its powers, overlooking the unjust management practices of defendant Grand Trunk; and in the perfunctory adjudication of the procedural irregularities of the [first] hearings, and the circumvention of [plaintiffs'] rights under the collective bargaining agreement," Complaint, Count II, ¶ 15; Count IV, ¶ 15.

The district court read the complaint as alleging a "hybrid" action against BRAC and the Lodge for breach of the duty of fair representation and against Grand Trunk for breach of the collective bargaining agreement. It held that, as such, the suit was barred by the applicable six-month statute of limitations. It also noted that it lacked the power to set aside the Board's findings, as the plaintiffs had failed to plead facts that fit the three statutory grounds on which a court may set aside a railway labor arbitral decision. *Steffens v. Brotherhood of Railway, Airline & Steamship Clerks*, No. 85–C–5090 (Nov. 18, 1985). Steffens and Garcia appeal both of these rulings.

## II

The only difficulty in this appeal lies in construing the plaintiffs' complaint. It mixes together two discrete causes of action: (1) the "hybrid" action, implied in the

---

1. Defendant Grand Trunk asked the district court to sever the claims on the ground that plaintiffs had not alleged any grounds for join-

der under Fed. R. Civ. P. 20. The district court found it unnecessary to rule on this issue and it has not been renewed on appeal.

Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, against a union for breach of the duty of fair representation and against an employer for breach of the collective bargaining agreement and (2) a petition to have an order of a Public Law Board set aside pursuant to RLA § 3 first (q), 45 U.S.C. § 153 first (q). The complaint alleges facts which, if true, would support a finding that the union had breached its duty of fair representation and that the union and employer had colluded to deprive plaintiffs of their rights under the collective bargaining agreement. Jurisdiction is properly claimed under 28 U.S.C. § 1337, *see Tunstall v. Brotherhood of Locomotive Firemen & Enginemen*, 323 U.S. 210, 213, 65 S.Ct. 235, 237, 89 L.Ed. 187 (1944). This is enough to state a claim for a hybrid duty of fair representation suit. But the complaint styles itself as an "action to vacate two Public Law Board awards" and also bases the district court's jurisdiction on RLA § 3 first (q), 45 U.S.C. § 153 first (q), which provides for limited judicial review of a railway labor arbitral award. Finally the complaint is peppered with allegations that the Board ignored evidence and exceeded its jurisdiction in making its awards. We may assume *arguendo* that the complaint seeks to plead both actions since we conclude that Rule 12(b)(6) dismissal would be proper as to each.

A. The Hybrid Action.

██ The RLA affords an employee an implied right of action against his union for breach of the duty of fair representation. *Steele v. Louisville & Nashville Railroad*

*Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) (RLA imposes on collective bargaining representative a duty independent of the terms of the agreement to represent all of the members of the bargaining unit fairly). An employee may join in this action against the employer and assert that the collective bargaining agreement has been breached if he can allege that the employer's conduct somehow contributed to the union's breach.[2] *See Czosek v. O'Mara*, 397 U.S. 25, 29, 90 S.Ct. 770, 773, 25 L.Ed.2d 21 (1970); *United Independent Flight Officers, Inc. v. United Airlines, Inc.*, 756 F.2d 1274, 1283 (7th Cir.1985). Joinder of the employer also allows the court to award the plaintiff full relief from the results of the union's breach. *See Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks*, 782 F.2d 674, 686 (7th Cir.1986).

██ Steffens and Garcia have alleged in their complaint that BRAC and the Lodge colluded with the Grand Trunk with the intention of depriving them of their contract rights. The facts alleged are sufficient to state a claim against these three for breach of the duty of fair representation. *Cf. Graf v. Elgin, Joliet & Eastern Ry. Co.*, 697 F.2d 771, 778–80 (7th Cir.1983) (allegations of union negligence do not state a claim for breach of the duty of fair representation). Insofar as this is the basis for the suit, however, the district court was correct that it is barred by the six-month statute of limitations applicable to such suits. *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985). Appellants are mistaken in their

---

2. A "hybrid" claim brought under the RLA differs from an identical suit brought under the Labor Management Relations Act (LMRA), 29 U.S.C. § 141 *et seq.*, in one respect. Under the LMRA the plaintiff's claim against the employer is brought under § 301, 29 U.S.C. § 185, but a RLA plaintiff may not bring a direct claim against the employer because there is no corresponding jurisdictional base. Instead, the employer is merely joined as a party in the duty of fair representation action. To that extent, such a suit is not a "true" hybrid action. There is disagreement over whether the plaintiff needs to allege that the employer is in some way involved in the union's breach—the issues are outlined and cases discussed in *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 697 F.2d 771, 780–81 (7th Cir.1983), and *Raus v. Brotherhood of Railway Carmen*, 663 F.2d 791, 796–98 (8th Cir. 1981)—but we need not reach this question here since the plaintiffs did allege collusion between the Grand Trunk and BRAC to defeat their rights under the collective bargaining agreement. Complaint, Count II, ¶¶ 10–13; Count IV, ¶¶ 10–13.

contention that the two-year limitations period of RLA § 3 first (r), 45 U.S.C. § 153 first (r), applies. That section provides the statute of limitations for a petition for enforcement or review of a decision of a railway labor arbitral tribunal. By its terms it applies only to "[a]ll actions at law based upon the provisions of this section [§ 153 first]." The duty of fair representation does not arise under 45 U.S.C. § 153 first: it is implied from the policies behind § 2 of the RLA, 45 U.S.C. § 152. *See Ranieri v. United Transportation Union*, 743 F.2d 598, 599–600 (7th Cir.1984). The absence of a statutory limitations period is what created the need to borrow one—and we held in *Dozier* that the most appropriate one was the six-month period applied to such hybrid suits under the LMRA. 760 F.2d at 851; *see also United Independent Flight Officers, Inc. v. United Airlines, Inc.*, 756 F.2d 1262, 1269–73 (7th Cir.1985).

■ The six-month period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [breach of duty]." *Dozier*, 760 F.2d at 851, *quoting Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). The district court ruled that plaintiffs should have known of the union's breach, at the latest, by the time the Board issued its awards:

> [T]he Union had expressed to Steffens, in correspondence dated October 28, 1983, that it was in agreement with the Railroad that Steffens' case was weak. With regard to Garcia's case, the Union suggested a proposal for abandonment of Garcia's claim for lost pay in return for his reinstatement in informal discussions with the Railroad which commenced on October 8, 1982. In view of these facts as alleged in the complaint, it was apparent to the plaintiffs at the time of the Public Law Board's decision that the Union would not appeal that decision. Therefore, the breaches complained of

here occurred when the Public Law Board announced its decision on May 30, 1984.

*Steffens, supra*, at 4–5. The district court's determination that the limitations period began to run on May 30, 1984 was conservative and certainly did not prejudice plaintiffs. According to the complaint, the actions that constituted the union's breach occurred much earlier. Steffens claimed that the union breached its duty, starting in January 1982, when it dragged its feet about taking Steffens' grievance to the Board. Complaint, Count II, ¶ 1. Garcia asserted that the union breached its duty by its incompetent representation of his interests during the August 1982 Grand Trunk hearing, *id.*, Count IV, ¶ 1, and by entering into informal negotiations with the Grand Trunk about his case in October 1982, *id.* ¶¶ 3, 10. There is no suggestion that Steffens and Garcia did not know about these acts when they occurred. The district court was entitled to take the facts as alleged by the plaintiffs in his determination that the statute of limitations had run.

Steffens and Garcia argue that BRAC's tardiness in pursuing their claims through the grievance procedure (a two-and-a-half year delay) lulled them into believing that BRAC would, sooner or later, appeal the Board's awards to the district court. They do not spell out the significance of this, but we assume that they are suggesting that their causes of action did not accrue—or that the statute was tolled—until the time for judicial review elapsed (at which point they would have known that the union was not going to do anything to save their jobs). But the availability of review does not change the fact that appellants knew of the facts underlying their duty of fair representation claim at the latest when the Board issued the awards. The same argument was made in *Freeman v. Teamsters Local No. 135*, 746 F.2d 1316 (7th Cir.1984), under similar facts. We held that "[p]laintiff's cause of action concerning the alleged inadequacy of

Local 135's assistance during the grievance process accrued when the arbitrator reached a final binding decision," *id.* at 1319, and not after the time for seeking judicial review elapsed.

Thus, we agree with the district court that plaintiffs' hybrid action (the claim most compatible with the facts they allege) is barred by the statute of limitations.

B. Judicial Review of an Arbitration Award.

■ Under the RLA so-called "minor disputes," that is, disputes over the meaning or application of a collective bargaining agreement, 45 U.S.C. § 153 first (i), are resolved by statutory arbitration procedures, *id.* § 153 first. Arbitration is not a contractual remedy under the RLA but the exclusive mechanism by which an employee's claim that his employer has breached the collective bargaining agreement is adjudicated. (The one exception, as we have seen, is joinder of the employer as a defendant in an employee's duty of fair representation claim against the union.) Decisions are rendered either by a division of the National Railroad Adjustment Board ("NRAB"), a permanent arbitral tribunal established by RLA § 3 first, 45 U.S.C. § 153 first, or (if bargained for by the parties) an optional dispute-resolution mechanism such as the Public Law Board used in this case, RLA § 3 second, 45 U.S.C. § 153 second. Section 153 first (q) provides for judicial review of this arbitration,[3] available to either a union or an aggrieved employee, in federal district court. The review is, however, highly deferential, "among the narrowest known to the law," *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978). The findings of a Public Law Board are conclusive on the courts,

with three exceptions. Judicial review is allowed in the event of (1) failure of the Board to comply with the provisions of the RLA; (2) failure of the Board to confine its order or award to matters within its jurisdiction; and (3) fraud or corruption by a member of the Board. *See* 45 U.S.C. § 153 first (q); *Sheehan*, 439 U.S. at 93, 99 S.Ct. at 401; *Anderson v. National Railroad Passenger Corp. (AMTRAK)*, 754 F.2d 202, 203 (7th Cir.1984); *Brotherhood of Railroad Signalmen v. Louisville & Nashville Railroad Co.*, 688 F.2d 535, 537 (7th Cir. 1982).

■ If Steffens' and Garcia's complaint had alleged facts giving the district court the power to review the Board's awards, their suit would have to be reinstated. The two-year statute of limitations of RLA § 3 first (r), 45 U.S.C. § 153 first (r), applies to such a suit and only twelve months elapsed between the Board's decisions and this suit. However, the district court was correct that the plaintiffs alleged no facts that brought the three statutory exceptions into play.

Plaintiffs alleged that the Board "ignored the facts." This assertion, liberally construed, is no more than an attack on the Board's conclusions, and such challenges are not cognizable under this section. *See Anderson*, 754 F.2d at 204 (challenge to sufficiency of evidence is not enough); *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir.1985) ("All [the district court] asks ... is whether the arbitrators did the job they were told to—not whether they did it well, or correctly, or reasonably, but simply whether they did it."). Plaintiffs also alleged that the Board refused to decide their cases "on the merits" and that it "exceeded its powers" by overlooking the evidence favoring the em-

---

**3.** The RLA does not contain a standard of review to be applied to orders of Public Law Boards (§ 3 first (q) refers to the NRAB), but the courts have ruled that Public Law Boards, meant to be substitutes for an overworked NRAB, should be subject to the same standard

of review. *See, e.g., Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir.1985); *O'Neill v. Public Law Board No. 550*, 581 F.2d 692, 694 (7th Cir.1978).

ployees. While *ultra vires* actions by the Board will subject their decisions to judicial review, the complaint, once again, alleges no *facts* that go beyond expressions of disagreement with the result. The bald assertion that the Board exceeded its jurisdiction does not, without more, empower the district court to review the decision. Even in their brief to this court, appellants stop short of meeting the standard. They simply argue that the Board failed to "further[] the aims of the contract from the *employees'* standpoint," Appellant's Brief at 13 (emphasis in original).

Third, the plaintiffs alleged fraud and corruption and assert before this court that this gave the district court jurisdiction. But the only corruption alleged was on the part of BRAC and the Grand Trunk. The statute requires an allegation of fraud and corruption "by a member of the division making the order," 45 U.S.C. § 153 first (q). We decline to follow the Fifth Circuit, which in *Brock v. Republic Airlines, Inc.*, 776 F.2d 523 (5th Cir.1985), applied the two-year statute of limitations of RLA § 3 first (r), 45 U.S.C. § 153 first (r), to a complaint alleging a conspiracy between union and employer to deprive an employee of his rights. First, this approach ignores the clear language of the jurisdictional statute. 45 U.S.C. § 153 first (q). Second, it creates a situation in which some breaches of the duty of fair representation are subject to a two-year statute of limitations, while the rest are subject to the borrowed six-month period.

Appellants argue that employer-union collusion necessarily infects a Public Law Board, since each Board is composed of a company representative, a union representative, and a neutral (who would be a minor-

ity of one in the event of such collusion); again, however, they allege no facts even touching upon Board involvement in the conspiracy to deprive them of their rights.[4] Courts have been sensitive to the potential inequity of requiring employees to "submit their controversy to 'a group which is in large part chosen by the [defendants] against whom their real complaint is made,'" *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969), *quoting Steele*, 323 U.S. at 206, 65 S.Ct. at 233, and they realize that such collusion between employer and union is a real possibility. *See Graf*, 697 F.2d at 781 (collusion between union and employer would render remedies under arbitration provisions of RLA futile). This was a factor that prompted judicial recognition of a hybrid duty of fair representation claim. *Glover*, 393 U.S. at 330, 89 S.Ct. at 551; *Graf*, 697 F.2d at 780–81. Insofar as the plaintiffs sought relief from a conspiracy between BRAC and the Grand Trunk, their suit is a hybrid duty of fair representation action.

Finally, appellants urge us to apply a judicially-created basis for reviewing a Board: judicial review in the event a Board denies a litigant due process and thus acts unconstitutionally. This circuit does recognize this exception, *see O'Neill v. Public Law Board No. 550*, 581 F.2d 692, 694 (7th Cir.1978); *Kotakis v. Elgin, Joliet & Eastern Ry. Co.*, 520 F.2d 570, 574 (7th Cir.), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975); *see also Elmore v. Chicago & Illinois Midland Ry. Co.*, 782 F.2d 94, 95–96 (7th Cir.1986).[5] The only due process violations that the complaint alleges occurred at the preliminary hear-

---

4. It is difficult to even find this allegation in the complaint. At Count IV, ¶ 19, the complaint does state "Members of the Public Law Board were selected, by the very parties, defendants herein, against whom plaintiff Garcia's complaint is directed." It is difficult to read this sentence as conferring jurisdiction because, in context, it is offered to substantiate the claim that "appeal of the Public Law Board would be futile, and plaintiff Garcia is excused from pur-

suing any such remedy as a prerequisite to maintaining the instant action," *id.*

5. The district court declined to consider this exception, relying on *Sheehan, supra.* We do not think that *Sheehan* disapproved of judicial review of railway labor arbitral decisions upon allegations of due process violations. In that case, the court of appeals has held that the NRAB's failure to entertain an equitable tolling argument violated the petitioner's due process

ings conducted by the Grand Trunk; no procedural irregularities before the Board are mentioned. We have held that deprivation of procedural protections by a private employer do not in these circumstances merit constitutional protection. *Elmore*, 782 F.2d at 96–97 (line between private and public action is drawn between informal grievance procedures preceding arbitration and arbitration before the NRAB). Thus, we agree with the district court that it had no jurisdiction to review the awards of the Board.

### III

Since plaintiffs are barred from bringing a hybrid duty of representation action by the applicable statute of limitations and have failed to state a claim for judicial review of the Public Law Board's orders, the decision of the district court is

AFFIRMED.

---

right to be heard. The Court found that the NRAB had considered the claim and rejected it. It noted that for the court to reject the NRAB's decision in this matter because it disagreed would be to exceed the scope of its review powers. But the Court did not explicitly disapprove of due process as a basis for review. 439 U.S. 91–93, 99 S.Ct. at 401–02.