**Joseph Gerard MORIN,**
**Petitioner-Appellant,**

v.

**CONSOLIDATED RAIL CORPORATION and Brotherhood of Maintenance of Way Employees, Respondents-Appellees.**

No. 85–3143.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 6, 1987.

Decided Jan. 30, 1987.

Rehearing Denied March 19, 1987.

Joseph Gerard Morin, pro se.

Robert E. Connolly, Sowers, Larson, Riebenack & Connolly, Ft. Wayne, Ind., Louis P. Malone, III, Gen. Counsel, BMWE, Washington, D.C., Hermon M. Wells, Consolidated Rail Corp., Philadelphia, Pa., for respondents-appellees.

Before CUMMINGS, WOOD and RIPPLE, Circuit Judges.

PER CURIAM.

Appellant Joseph G. Morin, claiming that he was wrongfully discharged from his position with Consolidated Rail Corporation (Conrail), challenges the district court's decision not to grant him relief. The primary issue on this appeal is whether Conrail is an agency of the federal government for purposes of the due process clause of the Fifth Amendment.

On September 11, 1978, an anonymous individual telephoned an Assistant Track Supervisor at Conrail and indicated that appellant Morin was using Conrail railroad ties to build a bridge on his own property. The next day the Assistant and the Supervisor of Track in the course of investigating the allegation discovered that fifty-six ties were missing from a derailment site. On October 4, 1978, an investigation revealed that a bridge had been built with Conrail ties over a drainage ditch leading to Morin's property.

In accordance with the rules of the relevant collective bargaining agreement, a disciplinary hearing was held on December 4, 1978, on the Conrail property. Morin was represented by a Union representative. In addition, Morin had an attorney at the hearing but the attorney was not allowed to participate in the proceedings. Conrail produced several witnesses who were extensively cross-examined by Morin. Fol-

lowing the disciplinary hearing, it was determined by Conrail management that Morin was guilty of theft. On January 17, 1979, Conrail discharged Morin.

Morin appealed to the National Railroad Adjustment Board (NRAB) which is authorized by the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, to hear disputes over an individual's job rights. *See Elmore v. Chicago & Illinois Midland Railway,* 782 F.2d 94, 95 (7th Cir.1986). The review process is essentially the same as compulsory arbitration. *Id.* A three person panel of the NRAB's Third Division, located in Chicago, consisting of one representative of the union, one representative of Conrail, and a neutral referee, Robert Lowry, upheld Conrail's dismissal of Morin. Referee Lowry entered an order which concluded that "[t]he evidence produced [at] the trial overwhelmingly supports the charges of the Carrier. The Carrier's action in imposing the discipline was justified and with sufficient cause.... There is no proper basis for the Board to interfere with the discipline imposed."

Morin then filed this suit challenging the decision of the NRAB. Judicial review under 45 U.S.C. § 153 first (q) is highly deferential and has been characterized as "among the narrowest known to the law." *Steffens v. Brotherhood of Railway, Airline and Steamship Clerks,* 797 F.2d 442, 447 (7th Cir.1986) (quoting *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978)). The statute allows review if the Board (1) failed to comply with the provisions of the Railway Labor Act; (2) failed to confine its order to matters within its jurisdiction; or (3) had a member who acted corruptly in deciding a matter. *See Steffens,* 797 F.2d at 447 (citing 45 U.S.C. § 153 first (q)). This court has also found that review is available if the NRAB denies a person due process in contravention of the Fifth Amendment. *See Steffens,* 797 F.2d at 448; *O'Neill v. Public Law Board No. 550,* 581 F.2d 692, 694 (7th Cir.1978).

■ Morin claims both that he was denied due process and that a member of the Board acted corruptly. His claim of corruption by a Board member is supported only by his assertion that Referee Lowry could not have rendered a fair decision because he had previously served as a union steward. This allegation without more is clearly an insufficient basis on which to challenge a decision of the Board. Morin also argues that the NRAB's decision should be set aside because the NRAB did not afford him the opportunity to show that perjury occurred at his December 4, 1978, disciplinary hearing. In addition, Morin claims that he should have been given the opportunity to submit his criminal acquittal on theft charges to the NRAB. These allegations, which can be characterized as procedural due process claims, do not support setting aside the NRAB's decision. Our review of the record discloses that the NRAB provided Morin with ample opportunity to present his arguments. The decision of the Board, which based its conclusions on the thorough December 4 disciplinary hearing, cannot be described as lacking a foundation in reason or fact. *See Anderson v. National Railroad Passenger Corp.,* 754 F.2d 202, 203 (7th Cir.1984). The Board's reasoning is clearly adequate to withstand the limited judicial scrutiny that the law affords it.

■ Morin also appears to be claiming that Conrail did not afford him due process when it terminated him. Although the due process clause of the Fifth Amendment applies to actions of a governmental body such as the NRAB, the due process clause does not apply to an entity such as Conrail unless its actions can be fairly attributed to the federal government. In *Anderson v. National Railroad Passenger Corp.,* 754 F.2d 202 (7th Cir.1984), this Court held that the actions of Amtrak, a corporation that has some similarities to Conrail, in terminating an employee did not constitute government action for purposes of the Fifth Amendment. *Id.* at 204; *see also National Railroad Passenger Corp. v. Atchison, Topeka & Santa Fe,* 470 U.S. 451, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985). In so holding, we recognized that Amtrak is intertwined with the federal government to a certain extent. For example, Amtrak was established by an act of Congress. In addition, the federal government is repre-

sented on Amtrak's nine-member board by six members who can control the appointment of a seventh member, the president of the corporation. 754 F.2d at 204. Other factors, however, convinced us that there was not a sufficient relationship between the federal government and Amtrak to support a finding of governmental action. First, Congress explicitly declared that Amtrak is not a governmental agency or establishment. Second, Amtrak is a for-profit corporation chartered under the District of Columbia Business Corporation Act. Third, Amtrak's daily affairs were not run by federal employees nor were there any allegations of federal government involvement in the decision to terminate the employee in that case. This Court analyzed these facts in light of the Supreme Court's disposition of a similar argument made in *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). We concluded that as in *Blum* there was an insufficient nexus between the challenged activity and the federal government to invoke the protections of the due process clause. 754 F.2d at 204.

The Second Circuit has addressed the issue of whether Conrail can be fairly characterized as an agency of the federal government. *See Myron v. Consolidated Rail Corp.,* 752 F.2d 50 (2d Cir.1985). In *Myron,* the plaintiff alleged that Conrail had violated his First and Fifth Amendment rights by discharging him for representing various people with interests adverse to Conrail. The Second Circuit, using essentially the same legal analysis as this Court did in *Anderson,* concluded that the due process clause was not implicated by Conrail's decision to terminate that plaintiff. The Second Circuit noted that Conrail's creation was mandated by an act of Congress and that Conrail relied heavily on government funds. In addition, the court recognized that the federal government indirectly owned 85% of Conrail's preferred stock and was represented by six of the thirteen members of Conrail's board of directors. 752 F.2d at 54. The court, however, found that Conrail is a for-profit corporation established under the laws of Pennsylvania. *Id.* at 55. The federal rep-

resentatives on the board of directors owe a fiduciary duty, under state law, to the corporation and shareholders. In addition, although much of the funding for Conrail comes from federal sources, the court found that it is the stated policy of Congress that it intends to be repaid. For these reasons, the Second Circuit held that Conrail was not subject to the constraints of the due process clause.

We agree with the Second Circuit that Conrail, like Amtrak, is not an entity of the federal government for purposes of the due process clause. Although the issue was raised in a somewhat different context, the Special Court for the Railroad Reorganization Act also has recently concluded that Conrail is legally distinct from the federal government. *See Consolidated Rail Corp. v. Metro-North Commuter Rail,* 638 F.Supp. 350, 354 (Sp.Ct.R.R.R.A. 1986). Because the reasoning of both the Second Circuit and the Special Court is sound and consistent with our decision in *Anderson,* we hold that when Conrail discharged Morin, it was not constrained by the due process clause of the Fifth Amendment. Therefore, we do not reach the merits of appellant Morin's due process claims against Conrail.

AFFIRMED.