Patricia **RYDZESKI**

v.

**BURLINGTON NORTHERN, et al.**

Civ. No. 4–87–940.

United States District Court,
D. Minnesota,
Fourth Division.

March 27, 1989.

David G. Moeller and Brian W. Rude, Graham, Erickson, Hartman & Johnson, Minneapolis, Minn., for plaintiff.

Susan D. Thurmer, Thomas W. Spence Law Office, St. Paul, Minn., for defendants Burlington Northern R. Co. and Ross Traver.

Richard A. Williams and Michael A. Unger, Hvass, Weisman & King, Minneapolis, Minn. (John A. Edmond and Martha Walfoort, Guerrieri, Edmond & James, Washington, D.C., of counsel), for defendants Brotherhood of Ry., Airline, and Steamship Clerks, Edward Doberstein, and Cindy Burke.

## ORDER

ROSENBAUM, District Judge.

Defendants, Brotherhood of Railway, Airline, and Steamship Clerks (BRAC) (now Transportation Communications Union), Edward Doberstein, and Cindy Burke (union defendants), move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.). A hearing was held on October 26, 1988. After oral argument, and based upon the files, records, and proceedings herein, as well as for the reasons set forth below, union defendants' motion for summary judgment is granted.

*Background*

On July 29, 1985, plaintiff was assaulted by Charles A. Price, a co-worker and fellow union member at Burlington Northern Railroad Company (BN). At the time of the incident, plaintiff served as a clerk at BN's freight yard in Fridley, Minnesota. She was one of the clerks on the guaranteed Rotating Extra Board (GREB) shift.

BN conducted an investigation and hearing to determine whether either or both of the involved employees should be disciplined for their part in the incident. In such an investigation, Edward Doberstein (Doberstein), chairman of the Protective Committee for Local Lodge 1310 (local chairman) of BRAC, would normally represent a union employee at a disciplinary hearing. In this case, however, there were two union employees being investigated. Doberstein, therefore, consulted the BN/BRAC System Board of Adjustment (system board) concerning appropriate representation in cases involving two union members. To remedy this situation, the system board's general chairman assigned Doberstein to represent Price and, with plaintiff's consent, assigned Tom Wilcox, a BRAC local chairman from a sister lodge, St. Paul G.O.B., to represent plaintiff. Doberstein declaration, par. 5, pp. 2–3, dated September 30, 1988; *see also* plaintiff's deposition, pp. 15–16, 127.

Following BN's inquiry, Price was terminated. BRAC filed an appeal and subsequently Price was reinstated without back pay on a leniency basis. No disciplinary action was taken against plaintiff by BN. *Id.; see also* Doberstein deposition, p. 142.

As a result of injuries sustained during the assault, plaintiff was unable to return to work until September 9, 1985. Complaint, par. 9. Her return was under medical restrictions against lifting, gripping, raising hands, bending, twisting, pushing, pulling, prolonged sitting, overhead reaching, static positions, and overhead looking. Doberstein declaration, par. 6, p. 3.

Shortly after her return to work, plaintiff approached a lawyer, Robert J. Tennessen, Esq., who, by letter, advised Doberstein that BN was violating plaintiff's medical/work restrictions by assigning her to jobs requiring activities prohibited by her doctors. *See* Letter from Robert J. Tennessen, Esq., to Edward Doberstein, dated September 30, 1985. In response to Tennessen's letter, Doberstein first spoke with plaintiff and then requested a meeting with Ross Traver (Traver), BN's general agent. Doberstein declaration, par. 7, p. 3. Tennessen's concerns were reinforced by a letter from Cheryl Peterson, plaintiff's physical therapist, advising BN that plaintiff had been placed into jobs which required activities not allowed by her medical restrictions. Letter from Cheryl Peterson

to Gregg J. Tucek (Tucek), dated October 7, 1985.

On October 10, 1985, plaintiff and Doberstein met with Traver and Tucek to discuss plaintiff's medical restrictions, Peterson's letter, plaintiff's seniority, and available jobs. At that meeting, plaintiff could not identify any available positions which were compatible with her medical/work restrictions. Doberstein declaration, par. 8, p. 4.

On October 23, 1985, BN placed Rydzeski on medical leave status, concluding there were no positions available which plaintiff could perform until her physical and emotional condition improved. *See* letter from Ross Traver, general agent, BN, to P.J. Rydzeski, dated October 25, 1985; *see also* letter from Edward Doberstein, BRAC local chairman, to Ross Traver, general agent, BN, dated October 11, 1985.

It was suggested at the October 10, 1985, meeting that plaintiff consult an orthopedist or other specialist for further medical treatment. Doberstein declaration, par. 11, p. 4. Plaintiff consulted with Dr. Steven Noran at the Noran Neurological Clinic. Plaintiff also continued treatment with Denise Nelson, a licensed psychologist.

In March, 1986, plaintiff presented BN with revised medical/work restrictions. Nelson advised that plaintiff could return to work but should not be subjected to working with Charles Price. Letter from Denise Nelson, dated March 3, 1986. Dr. Noran also advised that plaintiff could return to work, subject to the following restrictions: "no truck driving," "no looking upward," and "no regular lifting or stair climbing." Dr. Noran note, dated March 3, 1986. Dr. Noran further advised that plaintiff could "[b]egin ½ time for first two weeks. Day shift only to begin personel (sic) restrictions as per psychologist." *Id.*

On reading Dr. Noran's restrictions, Doberstein became concerned that Dr. Noran's "day shift only" restriction was an open-ended requirement. Doberstein deposition, p. 116. Plaintiff did not have sufficient seniority to hold a day shift only position. Her seniority was sufficient to allow her a GREB position, but these required an employee to work all three shifts.

Doberstein declaration par. 13, pp. 4–5. Doberstein expressed his concern to plaintiff, who instructed him that Dr. Noran did not mean to maintain the limitation indefinitely, but only as a transitional measure—to ease her back into work. *See* Doberstein declaration, par. 13, p. 5.

BN read Dr. Noran's day shift only restriction to mean plaintiff could work only days indefinitely. *Id.* at par. 14, p. 5. BN advised plaintiff there were no positions available which would accommodate her medical restrictions. Letter from M.L. Holsteen, Terminal Superintendent, BN, to Patricia J. Rydzeski, dated April 4, 1986.

Over the next several months, Doberstein and plaintiff discussed her medical restrictions. He urged her to seek clarification from Dr. Noran concerning the day shift only restriction. Doberstein, with plaintiff's consent, attempted to reach Dr. Noran by telephone to obtain the clarification. Dr. Noran, however, would not discuss the matter with Doberstein. Doberstein declaration, par. 28, p. 9. BRAC local president Cindy Burke (Burke) and chairman Doberstein offered to accompany plaintiff to Dr. Noran's office to explain to him the required clarification. Plaintiff refused their offer. Doberstein declaration, par. 18, p. 6. Twice thereafter Dr. Noran provided medical updates which simply reiterated his March 3, 1986, restrictions. *See* Dr. Noran's notes dated April 7, 1986, and November 5, 1986. At no point did plaintiff obtain from Dr. Noran the clarification Burke and Doberstein requested. Doberstein declaration, par. 17, p. 6.

In December 1986, Doberstein referred plaintiff's case to the Executive Board of BRAC Lodge 1310 for review and recommendation in an attempt to determine what was needed to get plaintiff back to work. Doberstein declaration, par. 27, p. 9. Plaintiff was present at the board's December 8, 1986, meeting, where her medical restrictions—particularly Dr. Noran's day shift only restriction—were reviewed. *Id.; see also* Notes of BRAC Lodge 1310 Executive Board Meeting, December 8, 1986. It was recommended that a) plaintiff should request that Dr. Noran clarify his medical

restrictions and state clearly that the day shift only restriction was intended to be temporary, and b) a union local representative should accompany plaintiff to Dr. Noran's office to explain to Dr. Noran exactly what was needed by the union and how difficult it would be to get plaintiff back to work under the restriction. *Id.* Protective Committee member George McCoy offered to go with plaintiff to Dr. Noran's office. Plaintiff did not follow through with the board's recommendation or with McCoy's offer. Doberstein Declaration, par. 27, p. 9.

In the spring of 1987, plaintiff requested that Doberstein contact Dr. Thomas Mears, BN's chief medical officer, to ascertain exactly what had to be done for plaintiff to get back to work. Doberstein deposition, pp. 101–102. When Doberstein spoke with Dr. Mears, he learned that Dr. Mears had received correspondence from plaintiff's psychologist, Denise Nelson. Doberstein declaration, par. 29, pp. 9–10; *see also* Letter from Denise Nelson, licensed psychologist to Dr. Mears, Chief Medical Officer, BN, December 10, 1986. Dr. Mears requested that plaintiff receive a psychological evaluation to determine whether she was emotionally able to return to work. Doberstein declaration, par. 29, p. 10. Doberstein relayed BN's request to plaintiff, who agreed to the evaluation. *See* plaintiff's deposition, p. 173; *see also* Doberstein declaration, par. 30, p. 10.

Shortly after plaintiff's psychological evaluation was completed, in July, 1987, BN returned plaintiff to her regular GREB position.[1] *Id.*

With the above as prelude, the complaint before this Court is focused on the following facts: plaintiff was off work from July, 1985, to July, 1987. During that period, neither plaintiff nor her union, on her behalf, filed a claim or grievance against BN seeking plaintiff's return to work.

On or about October 2, 1987, plaintiff commenced this action in Hennepin County District Court, State of Minnesota. In her complaint, plaintiff asserts she was a member of defendant BRAC union, a former employee of defendant BN, and alleges three separate claims for relief: in Count I, plaintiff asserts, "by reason of defendant railroad's negligence," she was injured on BN's property and, therefore, her employer is liable to her for damages under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60; in Count II, plaintiff alleges union defendants breached their duty of fair representation by a) failing to adequately represent her in her efforts to return to work within her medical/work limitations or with payment of her medical expenses, and b) refusing to file a grievance on her behalf;[2] in Count III, plaintiff asserts defendant BN violated the Minnesota Human Rights Act, Minnesota Statutes, § 363.03, subdivisions 2 and 7.[3, 4]

On October 23, 1987, defendants BN, Traver, and union defendants timely peti-

---

1. Plaintiff's personal physician, Dr. Lenz, lifted her medical/work restrictions on October 22, 1985. Plaintiff's psychologist, Denise Nelson, cleared plaintiff of psychological/emotional restrictions on August 5, 1987. Denise Nelson's letter, August 5, 1987. Dr. Noran maintained his restrictions on plaintiff through October 6, 1987, when he stated plaintiff could work all shifts under certain restrictions; "no truck driving," "no work looking up," "limit stair climbing to 5% of work." Dr. Noran note, October 6, 1987.

2. Plaintiff suggests defendant Doberstein became resentful toward her during the BN investigation. Plaintiff contends defendant Doberstein resented her for turning in a fellow union member when she filed her injury form, and thereby notified BN of the assault. Plaintiff's deposition, pp. 167–168.

3. In January, 1986, plaintiff filed a charge of sex discrimination against BN and subsequently joined a class action lawsuit against BN, and her union alleging violations of 42 U.S.C. § 2000e, *et seq.* Plaintiff alleges, here, BN retaliated against her for her participation in that unrelated class action.

4. The Court has been advised that plaintiff's claims against defendants BN and Traver, Counts I and II of the complaint, have been resolved. *See* Letter from Susan D. Thurmer, to Clerk of United States District Court, December 27, 1988. However, the Court has not yet received, but awaits, settlement documents. The Court in this opinion is concerned only with plaintiff's cause against union defendants.

tioned this Court, pursuant to 28 U.S.C. § 1446(b), for removal of this action, pursuant to 28 U.S.C. § 1441(b). The gravamen of plaintiff's claim against union defendants is the claimed failure to represent plaintiff in obtaining her safe return to work within medical limitations. *See* complaint, par. 16. In sum, plaintiff asserts the union defendants' failure to file a grievance against BN violated the union defendants' duty of fair representation. *See* complaint, par. 17.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, and the Railway Labor Act (RLA), 45 U.S.C. §§ 151, *et seq.*

*Discussion*

Union defendants, in their motion for summary judgment, assert, *inter alia,* that plaintiff's claim is barred, on procedural grounds, by the applicable statute of limitation.[5]

There is no federal statute of limitation expressly applicable to claims against unions for breach of their duty of fair representation. To fill this statutory gap, the Supreme Court, in *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 158–63, 103 S.Ct. 2281, 2287–90, 76 L.Ed.2d 476 (1983), borrowed from related federal labor relations law the closest analogous timeliness rule. In *Del Costello,* 462 U.S. at 170–71, 103 S.Ct. at 2294, the Supreme Court held breach of duty of fair representation claims arising under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, are subject to the six month period of limitation prescribed in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b).[6]

Since *Del Costello,* nine United States Courts of Appeal, the Eighth Circuit included, have held the six month period of 29 U.S.C. § 160(b) also governs breach of duty of fair representation claims brought pursuant to the RLA, 45 U.S.C. §§ 151–188. *See Welyczko v. U.S. Air, Inc.,* 733 F.2d 239, 240 (2d Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188, 1192–94 (3rd Cir.1984); *Ranieri v. United Transportation Union,* 743 F.2d 598, 600–601 (7th Cir.1984); *Hunt v. Missouri Pacific R.R.,* 729 F.2d 578, 581 (8th Cir.1984); *Barnett v. United Airlines, Inc.,* 738 F.2d 358, 363–64 (10th Cir.) (opinion on rehearing), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984); *Brock v. Republic Airlines, Inc.,* 776 F.2d 523, 525–26 (5th Cir.1985); *Triplett v. Brotherhood of Ry., Airline and Steamship Clerks,* 801 F.2d 700, 702 (4th Cir. 1986); *Smallakoff v. Air Line Pilots Ass'n, Intern.,* 825 F.2d 1544, 1545 (11th Cir.1987); *Ratkosky v. United Transp. Union,* 843 F.2d 869, 873 (6th Cir.1988); *see also Beardsly v. Chicago & North Western Transp. Co.,* 850 F.2d 1255, 1265 (8th Cir.1988); *Intern. Ass'n of Machinists v. Aloha Airlines,* 781 F.2d 1400, 1405–1408 (9th Cir.1986) (the circuit court held that the limitation period applicable to a combined claim for breach of the collective bargaining agreement and breach of the status quo provisions of the RLA is the six month period contained in § 10(b) of the NLRA, 29 U.S.C. § 160(b)).

The Supreme Court has not directly addressed the RLA's limitation period concerning breach of duty of fair representation claims. However, in *West v. Conrail,* 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987), the Supreme Court suggested that, if faced with the issue, it too would conclude 29 U.S.C. § 160(b) provides the applicable limitation period. *Id.* 481 U.S. at 37–39, 107 S.Ct. at 1541.

Plaintiff does not explicitly invoke the RLA in her complaint. Nevertheless, plaintiff's purported claim against her union must be construed by this Court as arising

---

5. Union defendants further contend a) this cause is barred by plaintiff's failure to exhaust intra-union remedies, and b) should the Court reach the merits of plaintiff's claim, the facts alleged by plaintiff, as a matter of law, do not rise to the level of a breach of the duty of fair representation on the part of union defendants.

6. Section 10(b) of the NLRA provides in relevant part that: "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the [National Labor Relations] Board...." 29 U.S.C. § 160(b).

under the RLA, 45 U.S.C. §§ 151, *et seq.*, which governs railroad carriers in lieu of the LMRA, 29 U.S.C. §§ 141, *et seq. See* 45 U.S.C. §§ 151 and 152; 29 U.S.C. § 152. The RLA "addresses the duties of employee representatives and encompasses claims of unfair representation." *Sixel v. Transportation Communications Union, et al.,* 708 F.Supp. 240, 242 (D.Minn.1989).

Plaintiff, here, commenced her action in Minnesota state court on or around October 2, 1987. To fall within the applicable six month limitation period, plaintiff's cause must have accrued no earlier than April 1, 1987.

■ Under the RLA, a cause of action accrues and the statute of limitation begins to run when, in the exercise of reasonable diligence, the claimant knows or should have known of the union's alleged breach of its duty of fair representation. *Ratkosky v. United Transp. Union,* 843 F.2d 869, 873 (6th Cir.1988) (limitation period begins to run when potential plaintiff knows or should have known of the union's alleged breach of its duty of fair representation); *Steffens v. Brotherhood of Ry.,* 797 F.2d 442, 446 (7th Cir.1986) (the six month limitation period begins to run when claimant discovers, or in the exercise of reasonable diligence should have discovered the alleged breach of duty); *Levett v. Chesapeake and Ohio Ry. Co.,* 671 F.Supp. 1137, 1139 (E.D.Mich.1987) (statute begins to run when claimant discovers, or in the exercise of reasonable diligence should have discovered the breach).[7]

■ There is no dispute, here, that 1) plaintiff returned to work on September 9, 1985, under substantial medical restrictions, and 2) on October 23, 1985, BN placed Rydzeski on medical leave status after determining there were no jobs available which were commensurate with her medical restriction. The Court finds that it is BN's October 23, 1985, decision that there were no jobs available which underlies plaintiff's unfair representation claim; it is that decision which plaintiff contends should have been the subject of a grievance.

The collective bargaining agreement in effect at that time only allowed a 60 day period for the filing of grievances.[8] For this reason, sixty days from BN's October 23, 1985, decision plaintiff either knew or should have known union defendants were not going to file a grievance.

The evidence makes clear that plaintiff knew of the 60 day grievance limitation period. Defendant Doberstein had discussed the grievance procedure with plaintiff prior to the July, 1985, assault. Plaintiff presumably was aware of the procedures for filing claims, having herself filed four written time claims against BN on one day, April 16, 1985. *See* Doberstein declaration, par 24–25, p. 8, and the copies of plaintiff's previous claims attached thereto as Attachment H. In her deposition, plaintiff acknowledged a time claim is a type of grievance. Plaintiff's deposition, p. 62.

Moreover, by the time the collective bargaining agreement's grievance filing period had expired—December 22, 1985—plaintiff had already consulted no fewer than six

**7.** The Court notes the Eighth Circuit Court of Appeals has not addressed the question of when an unfair representation claim pursuant to the RLA accrues. In *AMCAR Division, ACF Industries, Inc. v. NLRB,* 592 F.2d 422 (8th Cir.1979), an action to review a National Labor Relations Board order, the Court of Appeals affirmed that the six month statute of limitation under § 10(b) of the NLRA, 29 U.S.C. § 160(b), did not begin to run until the injured party knew or should have known that his statutory rights were violated. *Id.* 592 F.2d at 430.

The Court further notes in *Butler v. Local U. 823, Int. Bro. of Teamsters, etc.,* 514 F.2d 442, 444 (8th Cir.1975), an action involving an unfair representation claim brought pursuant to the

LMRA, the Court of Appeals ruled that the employee's cause against his union accrued, for statute of limitation purposes, on the date when the local engaged in the acts of unfair representation—the date the union rejected plaintiff's grievance.

**8.** The agreement between BN and BRAC provided in relevant part that:

A. All claims or grievances must be presented in writing by or on behalf of the employee ... within 60 days from the date of the occurrence on which the claim or grievance is based....

Rule 59A, BN/BRAC collective bargaining agreement.

different lawyers or law firms concerning the July, 1985, incident. She addressed these lawyers concerning her resulting loss of work, and/or her perceived problem with union defendants, as well as their failure to assist her properly to get back to work within medical restrictions.[9] *See* Plaintiff's deposition, pp 21, 60–61, and 193.

This Court finds that plaintiff, in the exercise of reasonable diligence, either knew or should have known, by December 22, 1985, that the union defendants were not going to file a grievance on her behalf. Plaintiff's purported cause of action against her union accrued and the statute of limitation began to run on December 22, 1985.

Plaintiff cannot circumvent the limitation period by arguing her union's alleged breach is a continuing violation of its duty of fair representation.

A union whose alleged unfair representation arises solely out of inaction—such as failure to further a grievance—does not thereby commit an ongoing violation of its duty; the six month period commences when the union initially decides against action. [*Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 305–306 (7th Cir.1983); *see also Adams v. Budd Co.*, 846 F.2d 428 (7th Cir.1988)].... This rule is consistent with the strong federal policy favoring prompt and final resolution of labor disputes. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981); *Metz*, 715 F.2d at 304.

*Sixel v. Transportation Communications, et al.*, 708 F.Supp. 240, 243 (D.Minn.1989).

### Conclusion

The Court finds that plaintiff's breach of duty of fair representation claim accrued on December 22, 1985. The limitation period expired six months thereafter. Plaintiff must, therefore, have commenced this action on or before June 21, 1986. Instead, plaintiff waited until October 2, 1987, over 15 months later, to file this action. Plaintiff's unfair representation claim is time barred.[10]

Accordingly, IT IS ORDERED that:

Union defendants' motion for summary judgment is granted; Count II of plaintiff's complaint is dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**9.** Between September, 1985, and December, 1985, plaintiff consulted the following lawyers or law firms: Robert J. Tennessen, Esq.; Yaeger & Yaeger; Stone, Ribble, Bremseth, Meyer & Wood; Paul Sprenger; Rerat Law Firm; and John Goetz.

**10.** The Court could have determined union defendant's motion for summary judgment under its claim of failure to exhaust intra-union remedies as well. Article 5, § 2(c) of the BRAC constitution provides that members may not resort to the courts until they "first shall have exhausted all remedies by appeal or otherwise provided herein." The BRAC constitution provides for a specific appeal route for members, like plaintiff, who are dissatisfied with a decision of a local chairman not to press a grievance. *See* Protective Laws, Article 1, § 17, at 120, Constitution, Article 16, § 15.

Plaintiff was not ignorant of the internal appeals process. She recognized the union constitution; it was available at her work place. Plaintiff has not demonstrated that she would not obtain fair consideration from union officials who would review defendant's decisions. Plaintiff has produced no legitimate reason for her failure to exhaust intra-union appeal procedures prior to bringing this action. Plaintiff was obliged to comply with her union's internal appeal procedures before resorting to his Court. *Neal v. System Board of Adjustment*, 348 F.2d 722, 726 (8th Cir.1965). Plaintiff ignored the mandatory intra-union procedures available to her. Plaintiff is, therefore, barred from raising her breach of duty of fair representation claim in this Court.

It is unnecessary for the Court to consider the substantive merits of plaintiff's unfair representation claim, because her cause is barred, on procedural grounds, by the applicable statute of limitation, as well as for failure to exhaust intra-union remedies.