Howard L. MOON, Plaintiff-Appellant,

v.

SECRETARY, UNITED STATES DEPT. OF LABOR, Defendant-Appellee.

No. 83–8530.

United States Court of Appeals,
Eleventh Circuit.

Nov. 26, 1984.

Beverly B. Bates, Atlanta, Ga., for plaintiff-appellant.

Deborah R. Kant, William Kanter, Dept. of Justice, Civ. Div., Curtis E. Anderson, Asst. U.S. Atty., Washington, D.C., for defendant-appellee.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

Roadway Express, Inc. terminated the employment of the plaintiff, an amputee. The plaintiff filed a complaint with the United States Department of Labor pursuant to section 503(b) of the Rehabilitation Act of 1973, 29 U.S.C.A. § 793(b) (West 1975),[1] attributing his termination to his

---

1. Section 503 provides in pertinent part as follows:

Employment under Federal contracts

(a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.

(b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.

29 U.S.C.A. § 793 (West 1975 & Supp. 1976–1983). Pursuant to this provision, the implementing regulations require all federal contracts to contain expressly or by reference the following clause:

AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS

handicap. The Office of Federal Contract Compliance Programs (OFFCP)[2] investigated the complaint[3] and concluded that Roadway had indeed violated its obligations under section 503. The OFCCP invited Roadway to settle the matter informally[4] and referred the case to the Office of the Solicitor.[5] The Solicitor investigated further and determined that Moon's termination was a valid exercise of Roadway's management discretion. The OFCCP deferred to the Solicitor and closed the case.

(a) The contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as the following: employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

(b) The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Act.

(c) In the event of the contractor's noncompliance with the requirements of this clause, actions for noncompliance may be taken in accordance with the rules, regulations and relevant orders of the Secretary of Labor issued pursuant to the Act.

(d) The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices in a form to be prescribed by the Director [of the OFCCP], provided by or through the contracting officer. Such notices shall state the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified handicapped employees and applicants for employment, and the rights of applicants and employees.

(e) The contractor will notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding, that the contractor is bound by the terms of section 503 of the Rehabilitation Act of 1973, and is committed to take affirmative action to employ and advance in employment physically and mentally handicapped individuals.

(f) The contractor will include the provisions of this clause in every subcontract or purchase order of $2,500 or more unless exempted by rules, regulations, or orders of the Secretary issued pursuant to section 503 of the Act, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce such provisions, including action for noncompliance.

41 C.F.R. § 60–741.4 (1977); *see Howard v. Uniroyal, Inc.,* 719 F.2d 1552, 1562 (11th Cir.1983) (no state-law third party beneficiary action based upon this contract clause).

2. Section 503 of the Rehabilitation Act requires the President to issue regulations to implement the federal contractor affirmative action statutes. 29 U.S.C.A. § 793(a) (West Supp.1976–1983). The President delegated this authority to the Secretary of Labor. Executive Order 11758, 39 Fed.Reg. 2075 (1974). The Secretary in turn delegated the authority to the Assistant Secretary for Employment Standards, Secretary of Labor Order No. 16–75, § 4(a)(16), 40 Fed.Reg. 55913 (1975), and then to the Deputy Under-Secretary for Employment Standards, Secretary of Labor Order No. 1–81, 46 Fed.Reg. 28048 (1981). The regulations specify that a complaint may be filed with the Director of the OFCCP and that the Director is primarily responsible for investigating the complaints. 41 C.F.R. § 60–741.25, 741.26(a) (1977).

3. "The Department of Labor or the designated agency shall institute a prompt investigation of each complaint, and shall be responsible for developing a complete case record." 41 C.F.R. § 60–741.26(e) (1977).

4. "In every case where any complaint investigation indicates the existence of a violation of the affirmative action clause or these regulations, the matter should be resolved by informal means, including conciliation, and persuasion, whenever possible." 41 C.F.R. § 60–741.28(a) (1977).

5. "Agencies shall conduct investigations of complaints in accordance with specific requests of the Director." 41 C.F.R. § 60–741.26(f) (1977). "Agency" includes a "compliance agency of the government." *Id.* § 60–741.2. A "compliance agency" is "any agency which the Director requests to conduct investigations and such other responsibilities in connection with the administration of the Act as the Director may request, as appropriate." *Id.* Thus, the Office of the Solicitor was a "compliance agency" in this case. The Solicitor of Labor also has exclusive authority to bring legal proceedings under the Rehabilitation Act and to determine whether such proceedings or representation is appropriate in a given case. Secretary of Labor Order No. 16–75, § 4(d), 40 Fed.Reg. 55913 (1975).

Moon exhausted his administrative remedies and sought judicial relief.[6]

The district court held on cross-motions for judgment on the pleadings that the decision of the Secretary of Labor[7] declining to initiate enforcement proceedings was not an unreviewable exercise of discretion but was subject to the arbitrary and capricious or abuse of discretion standard of review specified in the Administrative Procedure Act, 5 U.S.C.A. § 706 (West 1977). Treating the Rule 12(c) motions as motions for summary judgment for purposes of the remaining issues, the court subsequently held that the applicable law and regulations endowed the Solicitor with the discretion to commence *vel non* enforcement under section 503 and that the Secretary's final decision was not arbitrary and capricious. The court therefore granted the Secretary's motion and denied Moon's. We affirm, though on different reasoning.

Moon insists that the findings of the initial OFCCP investigation committed the Department of Labor to pursue its enforcement procedures against Roadway. The decision of the OFCCP to close the case in reliance upon the opinion of the Solicitor, he continues, was a "clear abdication of executive authority" because the pertinent regulations endow the OFCCP alone with the discretion to initiate administrative proceedings under section 503. Appellant's Brief at 15. He concludes that even if the Secretary reached his final decision by the proper procedures, that decision was nevertheless based upon a misapprehension of the relevant facts and misapplication of the pertinent law.

## I. JUDICIAL REVIEWABILITY

Our task in resolving this case is simplified by discerning precisely what Moon

challenges. Three agency actions or rulings are involved: the decision of the Secretary to forego enforcement action against Roadway, the opinion of the Solicitor's Office upon which that decision was based and the inter-departmental procedure by which the investigation and resolution of Moon's claim were processed. We need not address the circumstance in which the Secretary determines that a federal contractor has violated section 503 but nevertheless decides not to institute enforcement proceedings. In that situation, a plaintiff such as Moon would challenge the nonenforcement decision itself, not the determination of violation. In this case, the Secretary found no violation. Thus, there was no basis upon which to instigate enforcement under section 503. Moon must therefore successfully attack the determination of the Solicitor to prevail. He may also challenge the referral of his case by the OFCCP to the Solicitor. "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson,* 727 F.2d 957, 976 (11th Cir.1984) (en banc) (*quoting Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1041 n. 28 (5th Cir. Unit B 1982); *see C.A. White Trucking Co. v. United States,* 555 F.2d 1260, 1264 (5th Cir.1977) ("[W]e shall set aside agency action, findings or conclusions ... made without observance of procedure required by law....").

▮ Thus, the threshold question is whether we have jurisdiction to evaluate the procedure by which the OFCCP referred Moon's case file to the Solicitor and to review the findings and conclusions of the Solicitor. We hold that we do. Each is a "preliminary, procedural, or intermediate

6. This is Moon's second appearance before this court. *See Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1085 (5th Cir.) (no private right of action against federal contractor under section 503), *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980).

7. Throughout this opinion, the "decision of the Secretary" refers to the final decision of the OFCCP by which it closed Moon's file in reliance upon the recommendation of the Solicitor. This decision was the "agency action" that entitled Moon to judicial review. *See* 5 U.S.C.A. § 702 (West 1977).

agency action or ruling"[8] that is reviewable with the final agency action, the nonenforcement decision. 5 U.S.C.A. § 704 (West 1977). As agency actions made reviewable by statute, *id.*, they are subject to judicial review unless "statutes preclude judicial review" or "agency action is committed to agency discretion by law." *Id.* § 701. No statutes preclude judicial review. Neither action is "committed to agency discretion by law," for section 503 and its implementing regulations are not "drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (*quoting* S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)).[9] Thus, as to these matters, we may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, ... otherwise not in accordance with law [, or] without observance of procedure required by law." 5 U.S.C.A. § 706.

## II. THE REFERRAL BY THE OFCCP TO THE SOLICITOR

■ Under the regulations effective at the time that Moon filed his claim with the Department of Labor, an employee could file a complaint with the Department alleging that a federal contractor had violated section 503. The Department was then to institute a "prompt investigation." 41

C.F.R. § 60–741.26(e) (1977). The regulations then provided as follows:

(1) If the complaint investigation shows no violation of the Act or regulations in this part, *or if the agency or the Director decides not to initiate administrative or legal proceedings against the contractor,* the complainant shall be so notified. Within 30 days, the complainant may request review by the Director of such a finding or decision.

(2) Where an investigation indicates that the contractor has not complied with the requirements of the Act or this part, efforts shall be made to secure compliance through conciliation and persuasion within a reasonable time ....

*Id.* § 741.26(g) (emphasis added). If conciliation failed, the OFCCP was to "proceed in accordance with the enforcement procedures contained" in the regulations. *Id.* § 741.28(a). Thus, the regulations contemplated that the Director of the OFCCP may decline to initiate administrative enforcement proceedings against a federal contractor even if the initial complaint investigation showed that the contractor had violated section 503. *See id.* § 741.26(g)(1). Nothing in the regulations precluded the Director from seeking the counsel of the Solicitor before deciding whether to bring administrative action. Indeed, "an administrative agency has inherent discretion to solicit the view of its legal staff, and to

---

8. "Agency action" is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C.A. § 551(13) (West 1977). An "order" is "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rulemaking but including licensing." *Id.* § 551(6). These definitions, when read in conjunction with 5 U.S.C.A. § 704, are sufficiently inclusive to include the recommendation of the Solicitor and the means by which the case was referred to him. The procedural question would probably be subject to review totally apart from the terms of the Administrative Procedure Act. *See Local 2855, American Federation of Government Employees (AFGE) v. United States,* 602 F.2d 574, 580 & n. 15 (3d Cir.1979); *Curran v. Laird,* 420 F.2d 122, 131 (D.C.Cir. 1969). We may also in any event review the

Solicitor's statement of reasons to insure that the Department of Labor did not omit consideration of any relevant facts or rely upon improper considerations. *See Save the Bay, Inc. v. Administrator of the EPA,* 556 F.2d 1282, 1295–96 (5th Cir.1977).

9. In this case, the propriety of the referral of Moon's case file to the Solicitor may be determined by analysis of the pertinent regulations implementing section 503. The findings and the conclusions of the Solicitor, upon which the Secretary based his final decision not to begin enforcement against Roadway, were based solely upon insufficient evidence to determine that Roadway had discriminated against Moon because of his handicap. Review of such a decision is uniquely within the expertise of this court.

consider even the unsolicited views of its legal staff, particularly when it is precisely these attorneys who have responsibility for the enforcement proceedings." *Presinzano v. Hoffman-La Roche, Inc.*, 726 F.2d 105, 111 (3d Cir.1984). The regulations expressly authorized the Director of the OFCCP to delegate investigation responsibilities to other agencies. 41 C.F.R. § 60–741.26(f) (1977).

■ Following the initial conclusion of the OFCCP that Roadway had violated section 503, Roadway, Moon, their attorneys, and representatives of the OFCCP held a conciliation meeting pursuant to the regulations. *See id.* § 741.26(g)(2). This meeting was fruitless largely because of Moon's pending legal actions against Roadway. Moon contends that the regulations required the OFCCP to afford Roadway an opportunity for a hearing at this point as a precedent to further possible administrative action. *See id.* § 60–741.26(g)(3). In the circumstances of this case, however, the Director of the OFCCP was required to give Roadway a formal hearing only if an "apparent violation of the affirmative action clause by [Roadway], as shown by any investigation, [was] not resolved by informal means and a hearing [was] requested." *Id.* § 60–741.29(a)(1). The Director, with the advice of the Solicitor, concluded that there was no "apparent violation of the affirmative action clause." Therefore, no hearing was required. "Nothing in the Administrative Procedure Act prohibits an agency from changing its mind, if that change aids it in its appointed task." *American Petroleum Institute v. EPA*, 661 F.2d 340, 355 (5th Cir. Unit A 1981).

■ Lastly, Moon argues that the Director of the OFCCP impermissibly abdicated his authority to enforce the Rehabilitation Act by acquiescing to the opinion of the Solicitor's Office after having already made an initial finding of discrimination. This argument follows from a misunderstanding of the regulatory scheme. The responsibilities of the OFCCP and the Solicitor are complementary—both are surrogates of the Secretary, responsible as delegatees for certain aspects of enforcement of section 503. *See supra* notes 2 & 5. The OFCCP does not abdicate its responsibility by requesting input from within this symbiosis. Further, following the recommendation of the Solicitor's Office, the National Office of the OFCCP reviewed Moon's case file to insure that the Solicitor had considered all the relevant facts. This additional review also included information submitted by Moon subsequent to the Solicitor's opinion. The OFCCP then informed Moon of its agreement with the conclusion of the Solicitor. This chronology convinces us that the OFCCP did not abdicate any of its responsibility under the Rehabilitation Act and the implementing regulations. The OFCCP has "discretion either to seek or take the advice of its attorneys in determining the merits of a case, or to decline to proceed with a case after it [has] been determined to be unsuitable for further legal action." *Presinzano*, 726 F.2d at 112.

## III. REVIEW OF THE SOLICITOR'S ANALYSIS AND RECOMMENDATION

In reviewing the statement of reasons for nonenforcement of Moon's claim, we may consider only "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824 (citations omitted). The agency must articulate a "rational connection between the facts found and the choice made." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (*quoting Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962)). "While we may not supply a reasoned basis for the agency's action that the agency itself has not

given, ... we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation,* 419 U.S. at 285–86, 95 S.Ct. at 441–42 (citations omitted). "In summary, we must accord the agency considerable; but not too much deference; it is entitled to exercise its discretion but only so far and no further; and its decision need not be ideal or even, perhaps, correct so long as not 'arbitrary' or 'capricious' and so long as the agency gave at least minimal consideration to the relevant facts as contained in the record." *American Petroleum Institute v. EPA,* 661 F.2d 340, 349 (5th Cir. Unit A 1981).[10]

■ After careful consideration of the record, we are unable to find any basis upon which to disapprove the findings and conclusions of the Secretary as stated in the recommendations of the Solicitor. The Solicitor's Office reviewed Moon's file twice, once after Moon was allowed to supplement it with additional information. The National Office of the OFCCP then reviewed the file again at the insistence of Moon and his attorney but agreed with the conclusions of the Solicitor. Moon attacks on appeal certain specific findings of the Solicitor's recommendation. None of his contentions, however, are relevant to the Secretary's ultimate finding that Roadway terminated Moon for reasons other than his handicap. *See* Record at 69 ("[T]he evidence does tend to indicate that the company acted unwisely in terminating a long-term employee because of his effort to communicate to his superiors that a newly initiated sales program was unworkable, and the subsequent termination of such superiors tends to indicate that Mr. Moon was right."). We therefore hold as a matter of law that the findings of the Solicitor, upon which the Secretary based his decision not to challenge Roadway's termina-

tion of Moon, were neither arbitrary, capricious, nor otherwise contrary to law.

AFFIRMED.

---

**10.** On appeal of the grant of a motion for summary judgment, this court applies the same legal standards as those that control the district court in determining whether summary judgment is appropriate. *Thrasher v. State Farm Fire and Casualty Co.,* 734 F.2d 637, 638 (11th Cir.1984) (*citing Environmental Defense Fund v.* *Marsh,* 651 F.2d 983, 991 (5th Cir.1981)). Moon argues, however, that the district court's failure to issue findings of fact and conclusions of law renders that court's decision incapable of review. Such findings and conclusions are unnecessary upon the disposition of a summary judgment motion. FED.R.CIV.P. 52.