William P. ANDREWS, Plaintiff-Appellant,

v.

CONSOLIDATED RAIL CORPORATION and United States Department of Labor, Defendants-Appellees.

No. 86–1233.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1986.

Decided July 27, 1987.

Before COFFEY and RIPPLE, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

COFFEY, Circuit Judge.

William P. Andrews, the plaintiff-appellant, appeals from the district court's dismissal of his claims against Consolidated Rail Corporation and the Department of Labor. We affirm.

I

The plaintiff-appellant, William P. Andrews, was employed by Penn Central Transportation in 1970 as a stockman when he suffered injuries in January and May of that year necessitating that he discontinue working; in 1973, Penn Central and the plaintiff reached an agreement specifying that Andrews forego presenting himself for reemployment with Penn Central for a period of five years (until 1979). Three years thereafter, on April 1, 1976, Consolidated Rail Corporation ("Conrail"), the defendant-appellee, acquired the assets of Penn Central.

Andrews sought reemployment with Conrail after the agreed upon five-year waiting period.[1] At this time, Conrail, upon the recommendation of its medical director, refused to reinstate Andrews fearful that his medical condition[2] presented the possibility that he might very well injure others as well as aggravate his present medical condition.

On April 12, 1980, the plaintiff Andrews filed a complaint with the Office of Federal Contract Compliance Programs ("OFCCP"), United States Department of Labor. The complaint charged that Conrail had violated section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793[3] a statute that allows an individual to file a complaint with the Department of Labor alleging that a federal contractor (Conrail) has "failed or refuses to comply with the provisions of a contract with the United States, relating to employment of individuals with handicaps ..."[4] Based upon the results of its investigation of Andrews' complaint, the Indianapolis, Indiana, OFCCP Area Office issued a Notification of Results of Investigation stating that "[t]here was insufficient evidence to conclude that the contractor [Conrail] violated its obligation under the nondiscrimination and affirmative action provisions of section 503 of the Rehabilitation Act of 1973, as amended."

On January 25, 1983, the plaintiff Andrews requested the director of the OFCCP review the Area Office's decision and also asked leave to file additional medical reports; both requests were granted. After review and upon reconsideration, the OFCCP determined that Conrail was not in violation of section 503 of the Rehabilita-

---

**1.** During the five year period, Penn Central and then Conrail continued to carry Andrews on their seniority rosters.

**2.** Although the record is somewhat unclear it appears Andrews' medical condition consisted of a seizure disorder resulting from a malformation of a portion of the brain and spondylolisthesis, a forward displacement of one vertebra over another. *See Dorland's Illustrated Medical Dictionary* (26th ed.) p. 1239.

**3.** Section 503 of the Rehabilitation Act, codified at 29 U.S.C. § 793 provides in relevant part:
   "(a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified individuals with handicaps as defined in section 706(8) of this title. The provisions of this section shall apply to any subcontract in

excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.
   (b) If any individual with handicaps believes any contractor has failed or refuses to comply with the provisions of a contract with the United States, relating to employment of individuals with handicaps, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto."

**4.** Andrews' complaint alleged that Conrail violated its obligations under the nondiscrimination and affirmative action provisions of its federal contract by denying him the opportunity to return to work because of his handicap.

tion Act of 1973 since the medical reports established that Andrews' physical condition rendered him incapable of performing his duties as a stockman. Conrail offered to employ Andrews in a sedentary work assignment and also agreed to obtain a current medical evaluation to determine whether or not Andrews was presently physically able to perform as a stockman pursuant to the terms of the collective bargaining agreement.[5]

On November 30, 1983, Andrews initiated this action against Conrail in the district court claiming that Conrail failed to reinstate him in violation of the Fifth and Fourteenth Amendments of the United States Constitution, Article I, Section 1 of the Indiana State Constitution and sections 503 and 504[6] of the Rehabilitation Act of 1973, 29 U.S.C. §§ 793, 794. Subsequently Conrail moved pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the action for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. Specifically, Conrail alleged that (1) section 503 of the Rehabilitation Act of 1973 provided no cause of action to correct alleged discrimination against handicapped persons by a federal contractor, (2) Andrews failed to state a cause of action under section 504 of the Rehabilitation Act, since he did not allege that Conrail was a

---

5. The letter to the plaintiff's counsel from the director of the OFCCP provided in part:

"I have completed a review of the entire case file, including the material filed with the request for reconsideration. Based on my analysis, I have determined that the decision of the Chicago Regional Office was correct. My decision is based on the following factors:
1. All medical reports received by Conrail from its own physicians and those from the Railroad Retirement Board indicated that Mr. Andrews was not able to properly perform the duties of a stockman.
2. Conrail was willing to reinstate him in one of the more sedentary jobs available; for example, a clerk position.
3. The company is willing to pursue the collective bargaining agreement provisions for obtaining a medical determination of Mr. Andrews' ability to perform as a stockman.
The issue here is whether Section 503 of the Rehabilitation Act of 1973, as amended and its implementing regulations require the company to hire Mr. Andrews. There was doubt as to whether Mr. Andrews met the definition of a qualified handicapped individual for the position of stockman under 41 CFR 60–741.2. Conrail sent Mr. Andrews to several medical experts in order to resolve this question. Those physicians determined that Mr. Andrews' limitations prevented him from performing the duties of stockman. Even his personal physician recommended some restrictions on his activities. Mr. Andrews, however, insisted that he was capable of performing the duties of stockman. In this instance, Conrail chose to abide by two opinions of the medical experts rather than that of the complainant. Such a choice is permissible under 41 CFR 60–741.6(c)(2). Section 503 of the Rehabilitation Act of 1973, as amended, and its implementing regulations require companies to consider handicapped people on the basis of their qualifications for positions which they can perform. Conrail is not, un-

der law, required to offer Mr. Andrews a specific position.
This concludes the Department's review of this complaint and exhausts the administrative procedures under the Act."

6. Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794, provides:

"No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees."

The procedures for enforcement of section 504 are set forth at 29 U.S.C. § 794a.(a)(2) and (b):

"(a)(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

(b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

recipient of federal financial assistance, and, in any event, Andrews' claim under section 504 was barred by the statute of limitations and (3) Andrews' allegations of due process violations under the federal and state constitutions failed to state a cause of action, since Conrail is neither a federal nor a state agency, and no state action was involved. Shortly thereafter, Andrews filed a motion and was granted leave to file an amended complaint adding the United States Department of Labor as a necessary party to the action to challenge the Department of Labor's disposition of his section 503 complaint as arbitrary and capricious.

In response to Conrail's motion to dismiss, on October 31, 1984, the district court dismissed Andrews' claims based on sections 503 and 504 of the Rehabilitation Act of 1973, the Fourteenth Amendment of the United States Constitution, and Article I, Section 1 of the Indiana Constitution. *Andrews v. Conrail*, No. IP 83–1888–C, Mem.Op. (S.D.Ind. Oct. 31, 1984).

Initially, the trial court found that Andrews conceded that no private cause of action was available under section 503. Second, the district court found that Andrews' claim under section 504 was barred by the two year statute of limitations provided in the Indiana Code, 34–1–2–1.5 stating:

"Since plaintiff never filed an administrative complaint under § 504, the statute of limitations on that claim began to run in 1979 when Conrail refused to return him to active employment. Measuring from the end of that year, plaintiff's § 504 action, filed on November 30, 1983, comes 23 months after the two year limitations period applicable to § 504 actions had run. Accordingly, plaintiff's § 504 claim is now time barred."

Third, the trial judge referring to Andrews' Fourteenth Amendment of the United States Constitution claim that Conrail's refusal to return him to work denied him property and liberty interests, the trial judge found: "The Fourteenth Amendment affords protection only against state action. *See, Burton v. Wilmington Parking Au-*

*thority*, 365 U.S. 715, 721–22, 81 S.Ct. 856, 859–60, 6 L.Ed.2d 45, 50 (1961). Plaintiff makes no allegation that Conrail is associated with the state. The Fourteenth Amendment claim will be dismissed." Finally, the district judge found that Andrews' claim under Article I, Section 1 was without merit since the Indiana Constitution provided "no cause of action to redress injuries which cannot be attributed to the state." The trial judge stated:

"Plaintiff's attempt to state a claim under this provision [Article I, section 1 of the Indiana Constitution] is fundamentally misguided. A constitution provides a set of principles against which the lawfulness of state action by statutory enactment or police power may be evaluated. As such, it provides no cause of action to redress injuries which cannot be attributed to the state.

Plaintiff has not alleged that the state was involved in any way with his alleged injury. His state constitutional claim must therefore be dismissed."

(Footnote omitted). The district court refused to dismiss Andrews' claim under the Fifth Amendment of the United States Constitution that Conrail's refusal to reinstate him deprived him of liberty and property interests finding that:

"The Fifth Amendment imposes restrictions on the federal government, not on private persons. *Public Utilities Comm. v. Pollak*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952). Conrail is not an agency or instrumentality of the federal government. *See* 45 U.S.C. § 741(b). However, the act of a private person may be transformed into that of the federal government where the government is sufficiently involved with the activity that causes the actual injury. *See, Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Plaintiff has indicated his intention to show that this exception applies to the present case. Granting defendant's motion to dismiss this claim would improperly deny him an opportunity to do so."

On April 17, 1986, the trial court dismissed Andrews' complaint in response to

Conrail's renewed motion to dismiss and the Department of Labor's motion to dismiss. *Andrews v. Conrail*, No. IP 83–1888–C, Mem.Op. (S.D.Ind. Jan. 17, 1986) [Available on WESTLAW, DCT database]. Regarding Andrews' claim under the Fifth Amendment of the United States Constitution that Conrail's refusal to return him to work denied him protected liberty and property interests, the district court, relying on the Second Circuit's decision in *Myron v. Consolidated Rail Corp.*, 752 F.2d 50 (2d Cir.1985),[7] found that Conrail's relationship with the federal government was insufficient "to transform Conrail's conduct into federal action for purposes of the Fifth Amendment." In *Myron* the Second Circuit held that "[t]he federal government has not 'so far insinuated itself into a position of interdependence' with Conrail that the latter's personnel decisions can be considered federal action." *Id.* at 55–56 (footnote omitted).

As to the Department of Labor the trial court found that Andrews failed to state a claim under section 503 of the Rehabilitation Act of 1973 upon which relief could be granted since the OFCCP's decision not to prosecute Andrews' complaint was an unreviewable exercise of agency discretion. The trial judge relied primarily on the Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) in finding that since § 503 "sets no guidelines by which this Court may review the Department's decision; it commits the decision of whether or not to prosecute a handicap discrimination claim to the Department absolutely."

On appeal Andrews raises three issues: (1) Did the district court err in ruling that the plaintiff had failed to establish significant contacts between the federal government and the defendant Conrail to demonstrate a substantial government involvement in Conrail's business so as to permit a Fifth Amendment claim under the United States Constitution? (2) Did the trial court properly find that his claim under section 504 of the Rehabilitation Act of 1973 was barred by the statute of limitations? and (3) Did the district court properly find that the decision of the OFCCP pursuant to section 503 of the Rehabilitation Act of 1973 was an unreviewable exercise of agency discretion?

## II

■ Andrews argues that the district court improperly dismissed his United States Constitution Fifth Amendment claim pursuant to Conrail's Rule 12(b)(6) motion of the Federal Rules of Civil Procedure "because substantial issues of fact remain that would demonstrate that the government had sufficiently insinuated itself into the affairs of Conrail to impute Conrail's actions to the government." This court has stated that "A complaint should be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff is unable to prove any set of facts that would entitle the plaintiff to relief." *Doe v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411, 414 (7th Cir.1986).

Andrews asserts that Conrail's refusal to reinstate him to work should be considered that of the federal government, and thus subject to a claim of deprivation of a liberty and property interest under the due process clause of the Fifth Amendment of the United States Constitution since: (1) federal officials sit on the board of directors of Conrail; (2) the federal government owns 85% of Conrail's preferred stock; and (3) Conrail relies to a large extent on federal funds. This court has very recently addressed this issue. In *Morin v. Consolidated Rail Corp.*, 810 F.2d 720, 723 (7th Cir.1987) we stated "[C]onrail ... is not an entity of the federal government for purposes of the due process clause [of the

---

7. In *Myron* the Second Circuit noted the federal government's involvement in Conrail funding, ownership of Conrail stock, and representation on Conrail's board of directors. However, the *Myron* court emphasized that Conrail is a for-profit corporation, the federal financing of Conrail is in the form of loans at market interest rates, and the federal representatives on the board of directors owe a fiduciary duty under state law, to the corporation. In conclusion, the Second Circuit stated that "[t]here is nothing resembling federal supervision of day-to-day activities." 752 F.2d at 55.

Fifth Amendment]." In that case Morin argued that Conrail did not afford him his procedural rights under the due process clause of the Fifth Amendment when it discharged him.

In *Morin* this court followed the decision of the Second Circuit in *Myron v. Consolidated Rail Corp.*, 752 F.2d 50 (2d Cir. 1985) stating:

"The Second Circuit has addressed the issue of whether Conrail can be fairly characterized as an agency of the federal government. *See Myron v. Consolidated Rail Corp.*, 752 F.2d 50 (2d Cir.1985). In *Myron*, the plaintiff alleged that Conrail had violated his First and Fifth Amendment rights by discharging him for representing various people with interests adverse to Conrail. The Second Circuit, using essentially the same legal analysis as this Court did in *Anderson* [*v. National Railroad Passenger Corp.*, 754 F.2d 202 (7th Cir.1984)], concluded that the due process clause was not implicated by Conrail's decision to terminate that plaintiff. The Second Circuit noted that Conrail's creation was mandated by an act of Congress and that Conrail relied heavily on government funds. In addition, the court recognized that the federal government indirectly owned 85% of Conrail's preferred stock and was represented by six of the thirteen members of Conrail's board of directors. 752 F.2d at 54. The court, however, found that Conrail is a for-profit corporation established under the laws of Pennsylvania. *Id.* at 55. The federal representatives on the board of directors owe a fiduciary duty, under state law, to the corporation and shareholders. In addition, although much of the funding for Conrail comes from federal sources, the court found that it is the stated policy of Congress that it intends to be repaid. For these reasons, the Second Circuit held that Conrail was not subject to the constraints of the due process clause.

We agree with the Second Circuit that Conrail ... is not an entity of the federal government for purposes of the due process clause."

810 F.2d at 723. Since Conrail is neither an agency nor an entity of the federal government as we held in *Morin*, we hold that the district court's action in dismissing Andrew's claim under the Fifth Amendment to the United States Constitution was proper.

### III

Andrews next argues that the district court improperly held his claim under section 504 of the Rehabilitation Act of 1973 barred by the two-year statute of limitations pursuant to the Indiana Code, 34-1-2-1.5. As previously noted, Andrews alleged that Conrail improperly refused to return him to active employment in 1979. Although Andrews filed a complaint based on section 503 with the OFCCP on April 12, 1980, he did not pursue any remedies under section 504 until he initiated the present action in federal district court on November 30, 1983. He theorizes that the applicable statute of limitations for section 504 was tolled while his section 503 complaint was being considered by the OFCCP.

■ Since the enforcement provisions for section 504 contain no time limitation we look to the "[m]ost appropriate one provided by state law." *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Relying on the Supreme Court's decision in *O'Sullivan v. Felix*, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914) we stated, "[T]he applicable limitations period is that which a court of the state where the federal court sits would apply had the action been brought there." *Beard v. Robinson*, 563 F.2d 331, 334 (7th Cir.1977).

■ The relevant and applicable Indiana statute, 34-1-2-1.5 provides for a two-year statute of limitations:

"All actions relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary) shall be brought within two [2] years of the date of the act or omission complained of."

We must thus determine whether the district judge properly held that the two-year statute of limitations for Andrews' section 504 was not tolled while he pursued his section 503 claim.

Andrews' argument overlooks the marked differences that exist between sections 503 and 504. In *D'Amoto v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir.1985) this court emphasized the differences between sections 503 and 504 of the Rehabilitation Act, noting that section 504 provides for a private cause of action while section 503 does not and further Congress had divided responsibility for the enforcement of section 503 (Department of Labor) and section 504 (Department of Health, Education and Welfare).[8] *Id.* at 1481. The court pointed to another difference between the two sections: "The availability of an administrative remedy under Section 503 indicates another significant difference between the two statutory provisions. No such remedy is available under section 504." *Id.*

Andrews could have filed suit under section 504 anytime within the two year period of Conrail's refusal to return him to service in 1979. We note the provisions of section 503 do not require a complainant to exhaust his remedies before bringing suit under section 504. We are convinced that if Congress had intended to enact legislation expressly providing that a complainant must exhaust his remedies under section 503 before bringing suit under section 504 it would have, and in light of their reluctance to do so, we refuse to read a meaning into the statutes not intended by its framers. The plaintiff Andrews filed a section 504 claim in federal court on November 30, 1983, some 23 months (measuring from the end of 1979) after the applicable two-year limitation in Ind.Code 34–1–2–1.5 had run. We hold that the district court properly found the plaintiff's section 504 claim was time barred by the applicable statute of limitations.

## IV

Andrews lastly argues that the district court improperly held that the OFCCP's decision not to prosecute a handicap discrimination claim under section 503 of the Rehabilitation Act of 1973 was a matter committed to agency discretion and therefore not subject to judicial review. Specifically, the plaintiff asserts that "The decision of the OFCCP leaves significant questions as to the actions of the acting director when he reached his conclusion that Conrail had not violated § 503. These questions of the subjective intent of the decision maker correctly should be reviewable by the courts."

The construction to be given section 503 is a question of law, thus we "[m]ay properly conduct an independent review and resolution" of the district court's determination. *Securities and Exchange Commission v. Suter*, 732 F.2d 1294, 1300 (7th Cir.1984) ("An appellate court may properly conduct an independent review and resolution of questions of law determined by a district court."). Section 503 of the Rehabilitation Act of 1973 provides:

(b) "If any individual with handicaps believes any contractor has failed or refuses to comply with the provisions of a contract with the United States, relating to employment of individuals with handicaps, such individual may file a complaint with the Department of Labor. *The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.*"

29 U.S.C. § 793(b) (Emphasis added).

The statutory provisions for judicial review of agency actions are found in the Administrative Procedure Act ("APA") at 5 U.S.C. §§ 701–706. The APA, 5 U.S.C. § 704, provides that "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial

---

**8.** Congress transferred responsibility for enforcing section 504 to the Department of Education when the Department of Health Education and Welfare was abolished. *See* 20 U.S.C. § 3441(a)(4)(A).

review."[9] Title 5, U.S.C. § 701(a)(2) establishes limitations on judicial review:

"(a) This chapter [on judicial review] applies, according to the provisions thereof; except to the extent that—

(1) statutes preclude judicial review, or

(2) *agency action is committed to agency discretion by law.*"

(Emphasis added).

In *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) the Supreme Court examined 5 U.S.C. § 701(a)(2) and its parameters. In *Chaney*, a number of prison inmates were convicted of capital offenses and received sentences of death by lethal injection of drugs. They petitioned the Food and Drug Administration ("FDA") asking the FDA to take action to prevent the drugs from being used for such purposes alleging that their use violated the Federal Food, Drug, and Cosmetic Act ("FDCA"). The FDA refused the request. The inmates then filed suit against the Secretary of the Department of Health and Human Services in the district court for the District of Columbia claiming that the use of the drugs for capital punishment violated the FDCA and sought to have the district court compel the FDA to undertake action to prevent the drugs from being used in lethal injections on the prisoners.

The trial court granted summary judgment to the Secretary finding that a clear reading of the FDCA failed to manifest an intent to limit or make reviewable the enforcement discretion of the FDA. The United States Court of Appeals for the District of Columbia Circuit reversed, holding that the FDA's refusal to take enforcement action was reviewable and that such refusal was an abuse of discretion. The Supreme Court reversed the appellate court, concluding "[t]hat an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." 105 S.Ct. at 1656. In reaching its conclusion that the FDA's decision not to act on the prison inmates' request was not subject to judicial review under the APA, the Supreme Court emphasized:

"[e]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely."

*Id.* at 1655. The Supreme Court noted the many reasons for the "general unsuitability" for judicial review of agency decisions to refuse enforcement:

"First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."

*Id.* at 1656.

The Supreme Court, after examining the enforcement provisions of the FDCA, determined that they "[c]ommit complete discretion to the Secretary to decide how and when they should be exercised." *Id.* at 1658. The Court concluded that:

"The FDA's decision not to take the enforcement action requested by respondents ... [was] not subject to judicial review under the APA. The general exception to reviewability provided by § 701(a)(2) for action 'committed to agen-

---

9. Title 5, U.S.C. § 551(13) defines "agency action":

"(13) 'agency action' includes the whole or a part of an agency rule, order, license, sanc-

tion, relief or the equivalent or denial thereof, or failure to act; ..."

cy discretion' remains a narrow one, see *Overton Park*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), but within that exception are included agency refusals to institute investigative or enforcement proceedings, unless Congress has indicated otherwise."

*Id.* at 1659.

As previously noted, the Supreme Court concluded "[t]hat an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." *Id.* at 1656. The Court added, however, "[t]hat the decision is only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* (Footnote omitted).[10] "Congress may limit an agency's exercise of enforcement power if it wishes, either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue." *Id.* at 1657.

The Supreme Court's decision in *Chaney* requires us to examine section 503 of the Rehabilitation Act of 1973 to determine if Congress intended to limit the Department of Labor's discretion by establishing guidelines regarding enforcement actions either by setting substantive priorities or otherwise circumscribing the Department of Labor's power to discriminate among issues or cases it will pursue. Section 503 provides that after an individual files a complaint with the Department of Labor alleging a failure by a contractor to comply with the contract provisions providing for the employment of handicapped individuals, "The Department [of Labor] shall promptly investigate such complaint and *shall take such action thereon as the facts and circumstances warrant ...*" (Emphasis added). An examination of section 503 establishes that Congress in enacting the statute

neither set substantive priorities nor otherwise limited the Department of Labor's discretion in choosing which claims to prosecute. The district court stated, and we agree, that "Such a provision sets no guidelines by which this Court may review the Department's decision; it commits the decision of whether or not to prosecute a handicap discrimination claim to the Department absolutely." *Andrews v. Conrail*, No. IP 83–1888–C, Mem.Op. at 6 (S.D.Ind. Jan. 17, 1986) [Available on WESTLAW, DCT database]. Congress has spoken clearly: The Department of Labor is invested with discretionary authority to pursue or deny instituting enforcement actions under section 503 as the Department may deem appropriate.

The Department of Labor's regulation implementing section 503 also does not limit the department's discretion on whether to initiate an enforcement action. Title 41, C.F.R. § 60–741.26(g)(1) does not diminish the Department of Labor's discretion in handling section 503 complaints:

"If the complaint investigation shows no violation of the Act or regulations in this part, *or if the Director decides not to initiate administrative or legal proceedings against the contractor, the complainant shall be so notified.*"

(Emphasis added). The regulation's language "[i]f the Director decides not to initiate ..." further supports the conclusion that the Department of Labor is within its discretion in deciding when and when not to pursue enforcement actions. The regulation's clear import is the same as section 503: Prosecutorial decisions under section 503 are committed to the broad discretion of the Department of Labor.

In enacting section 503 of the Rehabilitation Act of 1973 Congress neither provided substantive priorities nor limited the Department of Labor's discretion in choosing which claims to pursue. The unambiguous

---

10. In *Cardoza v. Commodity Futures Trading Commission*, 768 F.2d 1542 (7th Cir.1985), this court stated:

"[W]e read *Chaney* solely as reaffirming the recognized position that § 701(a)(2) applies in certain circumstances where courts are unqualified to decide whether an agency has

abused its discretion ... *Chaney* added to the list of agency actions unsuitable for judicial review, such as State Department action in foreign affairs, and Federal Reserve Board Decisions setting interest rates, the class of agency nonenforcement decisions."

*Id.* at 1549.

language in both section 503 and its implementing regulations makes clear that this is not an appropriate case for judicial review since the Department of Labor's decision whether or not to prosecute a handicap discrimination claim is more properly committed to its sound discretion. We agree with the trial court and hold that its action in refusing to review the action of the Department of Labor [11] was proper since the Department of Labor's decision was clearly within its discretion under 5 U.S.C. § 701(a)(2).

## V

We hold that the district court action in dismissing Andrews' claims was proper since (1) Conrail is neither an agency nor an entity of the federal government; thus Andrews had no claim under the Fifth Amendment of the United States Constitution, (2) Andrews' section 504 claim was barred by the applicable Indiana two-year statute of limitations and (3) the Department of Labor's decision not to take any enforcement action with regard to Andrews' claim was committed to the Department's discretion and not reviewable under 5 U.S.C. § 701(a)(2).

AFFIRMED.

---

11. Andrews' reliance on *Moon v. Secretary, United States Department of Labor,* 747 F.2d 599 (11th Cir.1984) is misplaced. In *Moon,* a decision that predated *Chaney,* the Eleventh Circuit held that it had jurisdiction to review a section 503 claim relying on the Supreme Court's decision in *Overton Park.* In *Chaney,* the Supreme Court noted:

"*Overton Park* did not involve an agency's refusal to take requested enforcement action. It involved an affirmative act of approval under a statute that set clear guidelines for determining when such approval should be given. Refusals to take enforcement steps generally involve precisely the opposite situation, and in that situation we think the presumption is that judicial review is not available."

105 S.Ct. at 1655–1656.